UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ELDORADO MASSINGUE,<br>    Petitioner<br><br>    v.<br><br><br>LORI STREETER,<br>Superintendent, Franklin County Jail<br>And House of Correction,<br>    Respondent. | Case No. 3:19-cv-30159-KAR |

MEMORANDUM AND ORDER CONCERNING RESPONDENT'S RESPONSE AND MOTION TO DISMISS PETITIONER'S HABEAS PETITION

I.    Introduction

Petitioner Eldorado Massingue ("Petitioner") brings this habeas petition seeking relief pursuant to the decision of District Court Judge Patti Saris in *Brito v. Barr*, Civil Action No. 19-11314-PBS, 2019 WL 6333093, at *8 (D. Mass. Nov. 27, 2019), *appeal docketed*, No. 20-1037 (1st Cir. Jan. 8, 2020) and No. 20-1119 (1st Cir. Feb. 10, 2020) ("*Brito*"). Petitioner argues that his immigration bond hearing did not meet due process standards because he – rather than the government – was required to bear the burden of proving that he did not pose a danger to the community at large and because the presiding immigration judge did not consider alternative conditions of release. He further claims that this constitutional injury was prejudicial to him and that he is entitled to a new bond hearing at which the standards established in *Brito* are applied (Dkt. No. 13 at 1). Respondent Lori Streeter, Superintendent of the Franklin County Jail and House of Correction ("Respondent"), moved to dismiss the petition pursuant to Fed. R. Civ. P. 16(b)(6) for failure to state claim upon which relief can be granted, contending that the petitioner has not shown that he was prejudiced by the standards applied at his bond hearing, and cannot do

so, because, regardless of the burden of proof applied, the evidence established that he posed a danger to the community at large and was not entitled to release (Dkt. No. 11). The parties have consented to this court's jurisdiction (Dkt. Nos. 9, 21). *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. For the reasons stated below, the court hereby ALLOWS Petitioner's habeas petition and DENIES Respondent's motion to dismiss.

II. Legal Standards

Under 8 U.S.C. § 1226(a), "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." After the U.S. Immigration and Customs Enforcement Agency ("ICE") makes the initial decision to detain a foreign national, the foreign national may request a bond hearing in immigration court at any time before a removal order becomes final. *See* 8 C.F.R. § 236.1(d)(1). In *Pensamiento v. McDonald*, 315 F. Supp. 3d 684 (D. Mass. 2018), the court held that the constitutional right to Due Process "requires placing the burden of proof on the government in § 1226(a) custody redetermination hearings." *Id.* at 692. In *Brito*, a subsequent class action, the court entered the following declaratory judgment:

> [An] alien[] detained pursuant to 8 U.S.C. § 1226(a) [is] entitled to receive a bond hearing at which the Government must prove the alien is either dangerous by clear and convincing evidence or a risk of flight by a preponderance of the evidence and that no condition or combination of conditions will reasonably assure the alien's future appearance and the safety of the community. At the bond hearing, the judge must evaluate the alien's ability to pay in setting bond above $1,500 and must consider alternative conditions of release, such as GPS monitoring, that reasonably assure the safety of the community and the alien's future appearances.

*Brito*, 2019 WL 6333093, at *8. The *Brito* court further held that class members entitled to the benefit of the declaratory judgment could seek relief by showing prejudice via an individual habeas petition. *Id.* at *7 ("As the Court already explained in its class certification opinion, members of the Post-Hearing Class will have to litigate prejudice through individual habeas

2

petitions.").

> To establish prejudice, a petitioner must show that a due process violation *could* have affected the outcome of the custody redetermination hearing. *See Doe v. Tompkins*, No. 18-cv-12266, 2019 U.S. Dist. LEXIS 22616, at *3-4 (D. Mass. Feb. 12, 2019) (citing *Pensamiento …*, 315 F. Supp. 3d [at] 693 …; *Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011)). The prejudice inquiry requires the court to conduct "an individualized analysis of [the petitioner's] criminal history and personal characteristics." *Brito* [*v. Barr*], 395 F. Supp. 3d [135,] 147 [(D. Mass. 2019)].

*Mayic v. Hodgson*, Civil Action No. 19-12534-PBS, 2020 WL 360502, at *1 (D. Mass. Jan. 22, 2020).

The parties agree that Petitioner is a member of the post-hearing class certified in *Brito*. With the exception of the petition now before this court, it appears that the habeas petitions brought following the court's decision *Pensamiento* and the declaration entered in *Brito* have been filed in the Eastern Division of the United States District Court for the District and assigned to Judge Saris. In cases in which Judge Saris has determined that a petitioner is entitled to relief, she has ordered that the petitioner be released unless he or she receives, within ten calendar days, a bond hearing that complies with the requirements of *Brito*. *See, e.g., Mendez-Nolasco v. McDonald*, Civil Action No. 20-10055-PBS (D. Mass. filed Feb. 12, 2020), *Mayic*, 2020 WL 360502, at *3; *Tompkins*, 2019 U.S. Dist. LEXIS 22616, at *4.

III. Facts

According to ICE records, Petitioner is a native and citizen of Mozambique (Dkt. No. 11-1, ¶ 5 at 2). He first came to this country in or around 2011 on a student visa. His most recent entry into this country was in January 2015. The last point in time when he was full-time student was in the spring of 2016 (Dkt. No, 13-2 at 30). He was readmitted to Central Connecticut State University effective September 2019 but was unable to return to school because he was detained (Dkt. No. 13-2 at 18). He is twenty-eight years old (Dkt. No. 1 at 5) and married to a naturalized

3

United States citizen with whom he has a daughter, who was born on November 13, 2018 (Dkt. No. 1 at 5). He met his wife in or around October 2016 (Dkt. No. 13-2 at 13). Prior to his detention by ICE, he helped support his family by working for United States Steel in paid internship positions (Dkt. No. 1 at 8-9). His wife works as a full-time office manager for a physician's urgent care practice (Dkt. No. 1 at 9). At his bond redetermination hearing, Petitioner presented supportive letters from his wife's employer, who is also the family's primary care physician, one of his professors from Central Connecticut State University, and a number of friends in the community (Dkt. No. 13-2 at 46-54). His pastor and his wife and child attended the hearing before this court. At the bond hearing, Petitioner's wife testified that he is a devoted and involved parent and that his absence during his detention has been a financial and emotional hardship for their family (Dkt. No. 13-2 at 71-72).

Petitioner was taken into custody by ICE on June 24, 2019 after he was released from custody by the State of Connecticut. He had been incarcerated in Connecticut after he pled guilty to charges of disorderly conduct, a Class C misdemeanor, and reckless endangerment, a Class B misdemeanor. He was sentenced to six months incarceration, suspended after fifteen days, for reckless endangerment and three months incarceration, suspended after fifteen days, for disorderly conduct (Dkt. No. 1 at 9). While the petitioner has been arrested on four occasions, these are his only convictions. Petitioner's first arrest was for driving while under the influence of alcohol in Connecticut in October 2015. The charges were dismissed after he completed an alcohol awareness program (Dkt. No. 11-1, ¶ 10 at 3). So far as appears from the record, he has not driven under the influence since completing the alcohol awareness program. He was arrested for the second time in Miami, Florida in or around January 2016 and charged with trespass. The charges were dismissed after he completed an on-line behavioral class (Dkt. No. 11-1, ¶ 11 at 4;

Dkt. No. 13-2 at 41). He was arrested for the third time in October 2016 and charged with burglary and assault (Dkt. No. 11-1 ¶ 12 at 4). He testified that these charges resulted from a disagreement with the woman with whom he was then living and that he was unaware of the warrant for his arrest for some four to six months. The charges were dismissed when he and his then-girlfriend when to court and spoke with the judge (Dkt. No. 13-2 at 43). Petitioner admitted that each of these three incidents, none of which resulted in a criminal conviction, involved the consumption of excessive alcohol. The immigration judge stated at the bond hearing that the court knew little about these incidents other than the fact that they all involved alcohol (Dkt. No. 13-2 at 94).

On June 15, 2019, officers from the Newington Police Department responded to a call from Petitioner's home. Petitioner and his wife told police officers that the call had been a mistake and the police officers left without taking any action (Dkt. No. 11-1, ¶ 14 at 4). Police officers returned to the couple's home in the early morning hours of July 16, 2019. Petitioner's wife had called the police because Petitioner was under the influence of alcohol and he refused to give their infant daughter to his wife. He gave her the child after the police arrived, then resisted their attempts to handcuff him.

At Petitioner's bond hearing, the immigration judge asked Petitioner why he never voluntarily sought treatment for alcohol abuse before initiating and participating in an AA program for ICE detainees at the Franklin County facility (Dkt. No. 13-2 at 61), commented that he thought the AA program was too little, too late, stated that his concern was that Petitioner was going to drink and drive and kill someone or get drunk and hurt his wife or child and asked what the action plan was to prevent that from happening (Dkt. No. 13-2 at 89).

IV. <u>Discussion</u>

5

In analyzing a detainee's request for a bond redetermination, an immigration judge may consider a number of factors, including:

> "(1) Whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee persecution or otherwise escape authorities; and the alien's manner of entry to the United States."

*Vieira v. Moniz*, Civil Action No. 19-12577-PBS, 2020 WL 488552, at *3 (D. Mass. Jan. 30, 2020) (quoting *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)).

The parties agree that the *Brito* standards were not applied during Petitioner's bond redetermination hearing (Dkt. No. 13-2 at 9-10, 54-55, 81, 93-95) and that the immigration judge did not consider alternative conditions of release. Invoking *Maldonado-Velasquez v. Moniz*, 274 F. Supp. 3d 11 (D. Mass. 2017), Respondent moves to dismiss Petitioner's habeas petition on the grounds that he cannot demonstrate prejudice because his history of arrests and his recent convictions for crimes show unequivocally that he poses a danger to the community. Petitioner does not dispute that he must show prejudice and submits that, on the record before the court, he has satisfied this burden. "Because liberty is at stake, the Court writes promptly and briefly." *Vieira*, 2020 WL 488552 at *3.

The immigration judge detained Petitioner because he "did not meet his burden of showing that he is not a danger to the community" … "based on the nature of his prior crimes, repeated arrests involving alcohol, and the recency of his arrests" (Dkt 1-1 at 4). Respondent relies on Petitioner's prior arrest for DUI, the fact that all of his arrests involved alcohol abuse, and that he has been the subject of two civil restraining orders.

Petitioner was never charged with operating under the influence of alcohol after his first

OUI arrest and completion of the course he took following the arrest. *Cf. Matter of Egidijuis Siniauskas*, 27 I. & N. Dec. 207, 208 (BIA 2018) (ordering detention of an individual who had three convictions for driving under the influence and was also charged with driving under the influence immediately before being taken into ICE custody). Petitioner testified that he learned the lesson about drinking and driving after his first arrest. "Evidence of rehabilitation is relevant when considering a past history for purposes of a bond determination." *Mendez-Nolasco*, Civil Action No. 20-10055-PBS, slip op. at *7 (citing *Siniauskas*, 27 I. & N. Dec. at 209). At Petitioner's bond hearing, the government presented little to no information about the circumstances of the petitioner's two subsequent arrests which also did not result in convictions. There was an almost three-year gap between Petitioner's third arrest and the fourth arrest that resulted in his two misdemeanor convictions. That time encompassed his marriage and the birth of his child. While Petitioner may have resisted being handcuffed on the night of his most recent arrest, the government did not show that Petitioner was ever violent with his wife or his child or with anyone else other than the arresting officers on June 16, 2019. If the burden had been placed on the government to show by clear and convincing evidence that Petitioner might drive while intoxicated or engage in violence while under the influence of alcohol, the allocation of the burden of proof in this case *could* have changed the result, particularly if an immigration judge also considered alternative conditions of release.

The immigration judge who conducted Petitioner's bond redetermination hearing expressed concern that Petitioner had not done enough soon enough to address his problem with alcohol. To the immigration judge's point that there needed to be a plan to address this issue, in addition to the inmate-run AA meetings Petitioner has attended at the Franklin County House of Correction, he has been accepted into an inpatient alcohol treatment program including addiction

7

and mental health treatment and random alcohol blood testing that would be available immediately if he were released (Dkt. No. 13-3 at 2). His participation in the program could be made a condition of release. In view of the basis of the immigration judge's detention decision, consideration of this alternative condition of release also could have changed the result of a bond redetermination hearing.

V. Conclusion

Petitioner has shown that he was prejudiced by the errors in his bond hearing and therefore is entitled to a new bond hearing. The petition for writ of habeas corpus is accordingly **ALLOWED**. The court **ORDERS** that the petitioner be released unless he receives, within ten calendar days, a bond hearing that complies with the requirements of *Brito*, 2019 WL 6333093, at *8. The Clerk's Office is directed to close this case on the court's docket.

SO ORDERED.

Date: February 19, 2020         /s/ Katherine A. Robertson
                                KATHERINE A. ROBERTSON
                                UNITED STATES MAGISTRATE JUDGE