UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ELDORADO MASSINGUE,<br>    Petitioner<br><br>       v.<br><br><br>LORI STREETER,<br>Superintendent, Franklin County Jail<br>And House of Correction,<br>    Respondent. | Case No. 3:19-cv-30159-KAR |

MEMORANDUM AND ORDER CONCERNING PETITIONER'S
MOTION TO ENFORCE JUDGMENT
(Dkt. No. 24)

I.      Introduction

Before the court is Petitioner Eldorado Massingue's ("Petitioner") Motion to Enforce Judgment (Dkt. No. 24) ("Petitioner's Motion"). Petitioner is a member of the class certified by the United States District Court for the District of Massachusetts in *Brito v. Barr*, 415 F. Supp. 3d 258, 269-71 (D. Mass. 2019), *appeal docketed*, No. 20-1037 (1st Cir. Jan. 8, 2020); No. 20-1119 (1st Cir. Feb. 10, 2020). On February 19, 2020, I conditionally granted Petitioner's Petition for Habeas Corpus (Dkt. Nos. 1, 22), ruling that Petitioner, detained pursuant to 8 U.S.C. §1226(a), was entitled under *Brito* to a bond hearing at which the government would have to prove that he was "either dangerous by clear and convincing evidence or a risk of flight by a preponderance of the evidence and that no condition or combination of conditions [would] reasonably assure the [Petitioner's] future appearance and the safety of the community." *Brito*, 415 F. Supp. 3d at 271. Petitioner had a bond hearing at the Boston Immigration Court on February 24, 2020. At the conclusion of the hearing, the Immigration Court again denied

Petitioner bond (Dkt. No. 24 at 1).  In the motion now before the court, Petitioner claims that the Immigration Court did not comply with *Brito* or this court's prior order, arguing principally that the immigration judge failed to consider alternative conditions of release in denying his bond request, although Petitioner also argues that the government failed to satisfy its burden of proof on the questions of danger to the community and risk of flight (Dkt. No. 24 at 1).  For the reasons set forth below, the court DENIES Petitioner's Motion.

II.     Background

The factual and procedural background leading to this court's February 19, 2020 order is generally set forth in that order (Dkt. No. 22 at 3-5).  On February 24, 2020, the Immigration Judge, Todd Masters ("IJ"), denied bond to Petitioner in an oral order, followed by completion of a form order stating that the request for a change in custody status was denied because of "Danger + Flight Risk" (Dkt. No. 30-2 at 2).

III.    The Hearing

In the absence of a formal transcript of the hearing, the government has filed a transcript prepared from an agency audio recording of the hearing (Dkt. No. 30 at 1 n.1).  Because Petitioner does not dispute that the transcript is substantially accurate, the court's summary of the proceeding is based on the transcript.  It appears that the IJ had before him the Form I-286, which is the initial custody determination completed by ICE; a copy of this court's February 19, 2020 Memorandum and Order (Dkt. No. 22); Petitioner's submission in support of his request for release supplemented by a document reflecting his request to initiate an AA meeting at his place of detention (Dkt. No. 30-1 at 11-12); a transcript of the removal proceedings; the Department of Homeland Security submission of evidence related to bond; the prior immigration

judge's memorandum from the first bond hearing, and the BIA decision dismissing Petitioner's appeal from denial of bond (Dkt. No. 30-1 at 3-10, 12).

At the outset, the IJ stated that the government bore the burden of proof to show Petitioner's danger by clear and convincing evidence or risk of flight by a preponderance of the evidence taking into account safeguards that could protect the safety of the community and ensure Petitioner's future appearances (Dkt. No. 30-1 at 5, 11). In response to an objection from Petitioner's counsel to the admission of the transcript of the removal proceeding, the government argued that the hearing, held on December 4, 2019, was about Petitioner's arrest history and bore on dangerousness and was, therefore, relevant and admissible (Dkt. No. 30-1 at 6-9). The IJ admitted the transcript over Petitioner's objection. The material before the IJ included the reports from Petitioner's June 15-16, 2019 encounters with law enforcement officers and his arrest in Newington, Connecticut (Dkt. No. 24-2). In addition to summarizing the evidence about Petitioner's personal circumstances introduced at the February 18, 2020 hearing before this court, Petitioner's memorandum requested that the IJ consider GPS monitoring, mandatory alcohol counseling, and a breathalyzer car lock in addition to a bond of $1,500.00 as conditions of release sufficient to address dangerousness and risk of flight (Dkt. Nos. 24-1 at 11; 25 at 6).

Counsel for the government indicated her intention to call Petitioner as a witness. The IJ initially ruled that he "would allow a limited examination of the [Petitioner] but certainly not … a full-blown hearing," then decided he would hold off on testimony from Petitioner. He heard briefly from counsel for the government that she intended to elicit testimony about Petitioner's arrest record, confirmed that the police report for the Petitioner's most recent arrest was in the record and that the government was asserting only that Petitioner represented a danger to the community, and turned to Petitioner's counsel for an argument in support of release on bond

3

(Dkt. No. 30-1 at 13-15). Petitioner's counsel, attorney Thomas Rome, spoke at some length, addressing Petitioner's criminal history of four arrests, limited record of convictions, and his commitment to addressing an admitted problem with alcohol (Dkt. No. 30-1 at 13-23). Mr. Rome argued that there were far less restrictive custodial solutions in the case than the detention insisted on by the government, including that Petitioner would commit to seeking treatment for his problem with alcohol, would install a breathalyzer in any vehicle he owned, and would post a $1,500 bond (Dkt. No. 30-1 at 20). Observing that the Board of Immigration Appeals ("BIA") had previously affirmed the finding of dangerousness, the IJ asked Mr. Rome what evidence was before him that had not been before the BIA. Mr. Rome identified the substantial evidence of Petitioner's commitment to rehabilitation and the Uber receipts that established that Petitioner did not drive while under the influence on June 15-16, 2019. Mr. Rome further argued that the shift in the burden of proof under *Brito* was a meaningful change in the standards that should govern Petitioner's further detention or release (Dkt. 30-1 at 25-27).

Asked by the IJ why Petitioner's showing was not sufficient to rebut a finding of dangerousness by clear and convincing evidence, the government pointed out, as to dangerousness, that the police report showed that Petitioner's wife told police officers on June 16, 2019 that Petitioner's excessive drinking made her concerned for her safety and their daughter's safety (Dkt. No. 30-1 at 30; Dkt. No. 24-2 at 5). The government argued that the record showed that Petitioner had had prior opportunities for rehabilitation, including prior classes addressing alcohol abuse, and that the facts of employment and his daughter's birth did not change his behavior. It was the government's view that the evidence of recent rehabilitation was not sufficient to overcome the evidence that Petitioner's problem with alcohol, as demonstrated by his behavior on June 15-16, 2019 when intoxicated, caused him to be a danger

to the community. Changing positions, the government's attorney further argued that a recent removal order, affirmed by the BIA, which left Petitioner with a very limited avenue of relief from removal, was sufficient to establish by a preponderance of the evidence that he was a risk of flight (Dkt. No. 30-1 at 29-34).

After deciding against taking live testimony, the IJ took a brief recess to deliberate. When he returned, he stated his finding that the government had met its burden of showing Petitioner's dangerousness to the community by clear and convincing evidence and his risk of flight by a preponderance of the evidence (Dkt. No. 30-1 at 38-39). On the issue of dangerousness, the IJ acknowledged that some of the alcohol-related incidents were "kind of dated." He rested his finding of dangerousness mainly on the June 2019 incident when Petitioner "was so intoxicated that [he] had to be tasered by arresting authorities in his own home." The IJ found this behavior "extremely dangerous and extremely violent."[1] He found that the Uber receipts, showing Petitioner had not driven on June 15-16 while under the the influence of alcohol, and the evidence of his commitment to rehabilitation insufficient "to mitigate the

---

[1] The police reports from the Newington police department indicated that two officers were dispatched to Petitioner's residence on June 15, 2019 slightly after 9:15 p.m. in response to a 911 call (Dkt. No. 24-3 at 9). Petitioner told the officers that he had dialed 911 in error. He became upset with the presence of officers in his house and directed them to leave, which they did after confirming with Petitioner's wife that she and their daughter were fine (Dkt. No. 24-2 at 9-10). Because of Petitioner's agitated state, the residence was flagged through dispatch for officer safety (Dkt. No. 24-2 at 10). At approximately 1:30 a.m. on June 16, 2019, officers responded to a call from Petitioner's wife made because Petitioner was under the influence of alcohol, was holding their infant daughter, and refused to give the child to his wife. Although upset in the presence of the police, Petitioner gave the child to the police when ordered to do so (Dkt. No. 24-2 at 2-3). He then resisted the officers' attempts to handcuff him until an officer used a taser to subdue him (Dkt. No. 24-2 at 4). When Plaintiff's wife was asked by a police officer if anything about Petitioner made her concerned for her safety or the safety of her child, she responded, according to the police report, "his excessive drinking" (Dkt. No. 24-2 at 5). Petitioner subsequently pled guilty to charges of disorderly conduct, a Class C misdemeanor, and reckless endangerment, a Class B misdemeanor. He was sentenced to a combined sentence of thirty days incarceration and eleven months of probation (Dkt. No. 1 at 9).

Court's concerns over his danger to the community" (Dkt. No. 30-1 at 40). He further found, notwithstanding Petitioner's family ties, that the order of removal was sufficient to satisfy the government's burden of proving by a preponderance of the evidence that Petitioner was a risk of flight.

  IV. Analysis

Petitioner requests that this court conduct a de novo bail hearing to "cure the Immigration Court's repeated violation of his due process rights under the Fifth Amendment" in violation of *Brito* and this court's prior order (Dkt. No. 25 at 1) or that Petitioner be released on terms this court deems appropriate (Dkt. No. 32 at 1). The government argues, first, that this court lacks jurisdiction to hear Petitioner's Motion, and, second, that the February 24, 2020 bond hearing complied with the requirements of *Brito* (Dkt. No. 30 at 2). The court addresses the government's arguments in the order in which they are raised.

  1. Jurisdiction

Pointing to 8 U.S.C. § 1226(e), the government seeks dismissal of Petitioner's habeas petition on the ground that this court lacks jurisdiction to consider challenges to an immigration judge's discretionary bond determination (Dkt. No. 30 at 9). Section 1226(e) of Title 8 of the United States Code provides, in pertinent part, that "[n]o court may set aside any action or decision by the [government] under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." While the court's authority is limited in the context of reviewing a bond decision by an immigration judge, most district courts that have considered the issue have rejected the contention that the court cannot review an immigration judge's decision denying bond when a district court has previously entered a conditional grant of habeas relief. In *Diaz Ortiz v. Smith*, 384 F. Supp. 3d 140, 142-43 (D. Mass. 2019), the

6

petitioner was a member of the *Brito* class. Presiding District Judge Patti Saris granted his motion for a bond hearing that complied with *Brito*'s requirements. At a second bond hearing, just as in the instant case, an immigration judge again denied the petitioner's request for release on bond. The petitioner moved to enforce the court's prior order, arguing that, at the second bond hearing, the immigration judge had failed to place the appropriate burden on the government. The court held that it had jurisdiction to address the petitioner's motion to enforce the court's judgment because its prior order "granted a conditional writ of habeas corpus that gave the Government a chance to cure the constitutional defect in Diaz Ortiz's detention … [and] [a] district court retains jurisdiction to 'review compliance with its earlier order conditionally granting habeas relief.'" *Id.* at 142 (citing *Herrera v. Collins*, 506 U.S. 390, 403 (1993); quoting *Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011) (collecting cases)). The district court further rejected the argument that the pending appeal of its order in *Diaz Ortiz* deprived it of jurisdiction because, absent a stay or some other form of relief, a district court retains jurisdiction to implement or enforce its judgment or order. *Id.* at 142-43 (citing *Blue Cross & Blue Shield Ass'n v. Am. Express Co.*, 467 F.3d 634, 638 (7th Cir. 2006); *In re Padilla*, 222 F.3d 1184, 1190 (9th Cir. 2000)).

While not unanimous, courts in other districts ruling on this issue in a similar context have reached the same conclusion as did Judge Saris. In *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227 (W.D.N.Y. 2019), the court gave extended consideration to the question of its subject matter jurisdiction. The court observed that district courts generally favor issuing a conditional writ of habeas corpus in order to permit the government to cure a constitutional error. A conditional writ would be meaningless, however, if the court could not subsequently determine compliance with that writ. *Id.* at 234-35 (quoting *Mason v. Mitchell*, 729 F.3d 545, 549 (6th Cir.

7

2013) (quoting *Satterlee v. Wolfenbarger*, 453 F.3d 362, 369 n.5 (6th Cir. 2006))). "So 'a federal court always retains jurisdiction to enforce its lawful judgments, including habeas judgments, [and] the court has the authority to see that its judgment is fully effectuated.'" *Id.* at 235 (alteration in original) (quoting *Gall v. Scroggy*, 603 F.3d 346, 352 (6th Cir. 2010)). The *Hechavarria* court further held that 8 U.S.C. § 1226(e) was not a bar to the court's subject matter jurisdiction because the court was not reviewing a discretionary judgment of the immigration judge but was, instead, reviewing "whether [the petitioner] received the [constitutional] due process to which he was entitled." *Id.* at 236 (citing *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) (quoting *Gutierrez-Chavez v. INS*, 298 F.3d 824, 829 (9th Cir. 2002)); *Cepeda v. Shanahan*, 15 Civ. 09446 (AT), 2016 WL 3144394, at *2 (S.D.N.Y. Apr. 22, 2016)). *See also Jimenez v. Wolf*, Case No. 19-cv-07996-NC, 2020 WL 1082648, at *2 (N.D. Cal. Mar. 6, 2020); *Fernandez Aguirre v. Barr*, 19-CV-7048 (VEC), 2019 WL 4511933, at *3-4 (S.D.N.Y. Sept. 18, 2019), *appeal docketed*, No. 20-51 (2d Cir. Jan. 9, 2020) (the court had subject matter jurisdiction pursuant to its authority to enforce a conditional grant of habeas relief; 8 U.S.C. § 1226(e) did not strip the court of jurisdiction to review a motion to enforce the court's prior order); *cf. Medley v. Decker*, 18-cv-7361 (AJN), 2020 WL 1033344, at *2 (S.D.N.Y. Mar. 3, 2020) (assuming the existence of subject matter jurisdiction for purposes of ruling on the petitioner's motion); *contra Pratt v. Doll*, Civil No. 3:17-cv-1020, 2019 WL 722578, at *3 (M.D. Pa. Feb. 20, 2019), *appeal docketed*, No. 19-1641 (3d Cir. Mar. 25, 2019) (requiring administrative exhaustion by appeal to the BIA before the court reviewed the petitioner's claim that the immigration judge did not conduct an appropriate individualized bond hearing).

  The weight of authority, including authority in this district, does not support the government's contention that this court lacks jurisdiction to consider Petitioner's claim that the

February 24, 2020 bond hearing was not in compliance with the constitutionally mandated *Brito* standards. Accordingly, the court turns to the merits of Petitioner's claim.

  2.  The Bond Decision

  i.  Standard of Review

> This Court approaches the question now posed by [Petitioner] "mindful of [its] obligation to afford … a degree of deference to the [factfinder's] determinations." *United States v. Tortora*, 922 F.2d 880, 882 (1st Cir. 1990). When examining any evidentiary proceeding and the adjudicator's opinion, there are at least two ways to challenge whether the adjudicator applied the correct standard of proof. First, a challenge may be based on the contention that the decisionmaker erred because the evidence itself could not – as a matter of law – have supported the adjudicator's conclusion. *See Nguti v. Sessions*, [16-CV-6703], 2017 WL 5891328, at *2 (W.D.N.Y. Nov. 29, 2017); *Enoh v. Sessions*, 16-CV-85(LJV), 2019 WL 2080278, at *8 (W.D.N.Y. May 15, 2017). Second, it may be clear from the adjudicator's opinion itself that he simply did not apply the correct standard to the facts.

*Hechavarria*, 358 F. Supp. 3d at 240 (second, third, and fourth revisions in original). "'[T]he court's task is narrow: it is to determine whether Respondent[s] complied with the [Opinion] and Order, not to review the hearing evidence de novo[.]'" *Medley*, 2020 WL 1033344, at * 2 (second, third, and fourth alternations in original) (quoting *Blandon v. Barr*, No. 6:18-cv-06941 (EAW), 2020 WL 465728, at *4 (W.D.N.Y. Jan. 22, 2020) (quoting *Apollinaire v. Barr*, Case # No. 19-6285 FPG, 2019 WL 4023560, at *3 (W.D.N.Y Aug. 27, 2019))); *see also Diaz Ortiz*, 384 F. Supp. 3d at 144 (the court does not have jurisdiction to consider a petitioner's disagreement with an IJ's weighing of the evidence and exercise of discretion with respect to dangerousness).

  ii.  The Finding of Dangerousness

The hearing transcript in the instant matter demonstrates that the IJ placed the burden of proof on the government to show dangerousness by clear and convincing evidence. He articulated the appropriate standard at the outset of the proceeding (Dkt. No. 31-1 at 6, 10, 11).

9

After hearing from Petitioner's counsel, the IJ required the government to articulate its reasons for contending that there was clear and convincing evidence of dangerousness (Dkt. No. 31-1 at 29). In response, the government argued that, as demonstrated by three arrests in 2015 and 2016 and the most recent arrest in June 2019 that resulted in Petitioner's detention, his abuse of alcohol was not a recent phenomenon. Counsel for the government pointed out that, although Petitioner's wife had characterized the events of June 15 and 16, 2019 as atypical in her testimony at the removal hearing, this position was not consistent with a statement she made to the police on June 16, 2019, when, asked if anything about Petitioner caused her concern for her safety or the safety of her daughter, she responded, "his excessive drinking" (Dkt. No. 30-1 at 30-31). The IJ then pointed to Petitioner's evidence of rehabilitation and pressed the government to explain why this evidence of participation in AA and related counseling was insufficient to bring the case below the standard of clear and convincing evidence (Dkt. No. 30-1 at 31). The transcript demonstrates that the IJ held the government to its burden of proof on the key question of dangerousness.

The question before this court is whether any reasonable factfinder could find by clear and convincing evidence that Petitioner would pose a danger to the community if released on bond. *See Fernandez Aguirre*, 2019 WL 4511933, at *6. The IJ had before him Petitioner's testimony at his removal hearing confirming that his three arrests in 2015 and 2016 all involved an excessive consumption of alcohol. One of those arrests arose from an incident with a woman with whom he was then living, who sought a restraining order against him at the time of the incident. Petitioner's attorney did not dispute the accuracy of the contents of the June 15 and 16, 2019 police reports, which reflected that, notwithstanding the alcohol abuse and behavioral programs Petitioner had attended as a result of the arrests in 2015 and 2016, he continued to

10

drink excessively and that, on June 16, 2019, he placed his infant child at risk and physically resisted police officers who sought to effectuate his arrest. The IJ could fairly characterize Petitioner's resistance to arrest as a dangerous and violent incident and he could reasonably accept the government's argument that Petitioner's evidence of rehabilitation, untested by the stresses of life under an order of removal and without employment, was not sufficient to guard against further dangerous incidents involving the abuse of alcohol.

Whether this court might have reached a different result if considering the issue de novo or in the context of a bail review in a criminal case, where a defendant is entitled to the presumption of innocence, is not relevant. "Ultimately, [Petitioner] disagrees with the immigration judge's weighing of the evidence and exercise of discretion with respect to dangerousness. The Court does not have jurisdiction to hear such a challenge." *Diaz Ortiz*, 384 F. Supp. 3d at 144 (citing 8 U.S.C. § 1226(e); *Denmore v. Kim*, 538 U.S. 510, 516 (2003) (8 U.S.C. § 1226(e) bars a challenge to "a discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding [an alien's] detention or release" (internal quotation remarks omitted); *Pensamiento v. MacDonald*, 315 F. Supp. 3d 684, 688 (D. Mass. 2018), *appeal dismissed*, No. 18-1691 (1st Cir. Dec. 26, 2018) ("Congress has eliminated judicial review of discretionary custody determinations.")). As in the *Diaz Ortiz* case, "for the reasons just described, the Court cannot say that 'the exercise of discretion in denying bond was so arbitrary that it would offend fundamental tenets of due process.'" *Id.* (quoting *Pratt*, 2019 WL 722578, at *4). Because "the finding of dangerousness render[ed] irrelevant any complaints [Petitioner] raises about the immigration judge's consideration of his flight risk" *id.* (citing *Matter of Urena*, 25 I & An. Dec. 140, 141 (BIA 2009)), the court does not address the question of risk of flight.

### iii. Conditions of Release

In *Diaz Ortiz*, the court held that "[t]he immigration judge's determination that [the petitioner] is dangerous obviated any need for him to consider conditions of release." *Id.* (citing *Urena*, 25 I. & N. Dec. at 141). Other courts considering the issue in a similar context have required such consideration in conjunction with a finding of dangerousness. *See, e.g., Fernandez Aguirre*, 2019 WL 4511933, at *5 (holding that the petitioner's bond hearing fell short of procedures required by due process and the court's order where "[t]he bond hearing transcript [was] utterly void of any discussion of whether non-incarceratory measures, such as home detention, electronic monitoring, and so forth, could mitigate any danger that Petitioner posed to the safety of the community").

In compliance with the declaratory judgment entered in *Brito*, 415 F. Supp. 3d at 271, this court's order required a new bond hearing at which an immigration judge evaluated Petitioner's ability to pay in setting bond and considered alternative conditions of release, such as GPS monitoring (Dkt. No. 22 at 2, 8). Contrary to Petitioner's contention, the IJ did not ignore the question of whether there were alternatives to incarceration. He rejected Petitioner's proposal of an ignition interlock device on the justifiable basis that he would be unable to enforce Petitioner's compliance with such a condition (Dkt. No. 30-1 at 20). He heard from Petitioner's counsel about treatment programs the family had considered. Mr. Rome was equivocal about the options for Petitioner to attend alcohol treatment programs because Petitioner's family members had lost their health care coverage as a result of Petitioner's unemployment (Dkt. No. 30-1 at 18-20). Before concluding the hearing, the IJ conducted a thorough colloquy about the amount of the bond Petitioner could afford to post in the event of release (Dkt. No. 30-1 at 35-38).

While Petitioner proposed location monitoring in his pre-hearing memorandum, he did not propose home detention in his memorandum nor did he address location monitoring as an alternative to incarceration during the hearing (Dkt. No. 24-1 at 11). Neither did the government or the IJ. Location monitoring by GPS is generally imposed to address a risk of flight. Monitoring Petitioner's location would not address or ameliorate the danger posed by Petitioner's possible continued abuse of alcohol and the attendant risks to Petitioner's family and the community of which the IJ was persuaded.

      iv.      COVID-19

In Petitioner's Reply to Government's Opposition to Petitioner's Motion to Enforce Judgement (Dkt. No. 32), Petitioner raised the COVID-19 pandemic as an additional issue for the court's consideration (Dkt. No. 32 at 5-6). There is no doubt about the serious concerns raised by COVID-19 and its impact, particularly on individuals living in group settings, including in prisons and houses of correction. There was, however, no evidence related to COVID-19 before the court on February 20, 2020 when the court issued its order requiring that Petitioner be afforded a *Brito* bond hearing, nor was there any such evidence before the IJ on February 24, 2020, when he held the hearing and denied Petitioner bond. Where the relief Petitioner originally sought was unrelated to concerns about COVID-19 and neither this court nor the immigration court had any evidence before it related to risks posed by COVID-19 and Petitioner's release or continued detention, this case is not an appropriate forum for raising this issue. Nothing about this order, which denies Petitioner's Motion, precludes Petitioner from filing separately or as a member of a class for habeas relief based on information about COVID-19 of the kind raised and addressed in *Savino v. Souza*, CIVIL ACTION NO. 20-10617-WGY, 2020 U.S. Dist. LEXIS 61775 (D. Mass. Apr. 8, 2020).

V.  Conclusion

For the foregoing reasons, Petitioner's Motion to Enforce Judgment (Dkt. No. 24) is DENIED.  It is so ordered.

Dated: April 14, 2020                           /s/ Katherine A. Robertson
                                                KATHERINE A. ROBERTSON
                                                U.S. MAGISTRATE JUDGE